IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHARON FENTRESS-BUSSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:23-cv-1080 (RDA/IDD) |
| ) | |
| LLOYD J. AUSTIN, III, in his official ) | |
| Capacity as Secretary of Defense, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Lloyd J. Austin's Motion to Dismiss for Failure to State a Claim (Dkt. 9). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 10), Plaintiff Sharon Fentress-Bussey's Opposition Brief (Dkt. 14), Defendant's Reply Brief (Dkt. 15), and Plaintiff's Notice of Supplemental Authority (Dkt. 18), this Court GRANTS IN PART and DENIES IN PART the Motion for the reasons that follow.

### I.  BACKGROUND

#### A.  Factual Background[1]

Plaintiff is a disabled veteran who served as a First Sergeant in the Army from 1988 through 2010. Dkt. 1, ¶ 25. Born in 1965, she is also an African-American woman. *Id.* ¶ 37. In 2011, she

---

[1] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

began federal service as a civilian employee with the Department of Defense in the Defense Security Service as a Management and Program Analyst/Program Manager Team Leader ("MPA"). *Id.* ¶¶ 27-28. The Defense Security Service eventually became the Defense Counterintelligence and Security Agency ("DCSA"), and Plaintiff worked in DCSA in the Industrial Policy Directorate in her MPA role until 2019. *Id.*

In 2019, Kristen Cahill was detailed to the Industrial Policy Directorate. *Id.* ¶ 29. In September 2019, the Industrial Policy Directorate and the Industrial Operations Directorate merged. *Id.* ¶ 30. Although Ms. Cahill's detail was scheduled to end, Ms. Cahill spearheaded the creation of the Chief of Staff's Office and deemed herself Chief of Staff. *Id.* ¶¶ 30-31. Plaintiff was integral to maintaining the duties of the Industrial Policy Directorate while assuming responsibilities of Industrial Operations. *Id.* ¶ 32. Plaintiff functioned as Deputy Chief of Staff before the position was officially created. *Id.* During this time, Plaintiff was named Employee of the Quarter, Employee of the Year, and received multiple monetary awards for her accomplishments. *Id.* ¶ 33.

Ultimately, Helena Brown, who was on the same detail as Ms. Cahill, became Ms. Cahill's Deputy Chief of Staff. *Id.* ¶ 34. There was no job announcement for the position and no opportunity to compete for the position. *Id.*

In July 2020, Plaintiff was officially reassigned to the Chief of Staff's Office under the position description of her former duties, which did not accurately reflect her day-to-day responsibilities. *Id.* ¶ 35. Plaintiff asked that her position description be revised on multiple occasions. *Id.* ¶ 36.

Plaintiff observed other African-American women be detailed or reassigned away from Ms. Cahill. *Id.* ¶ 38. For those who requested a detail, the reason given was due to the failure of Ms. Cahill to promote African Americans. *Id.*

On April 4, 2022, the position of Supervisory Program Analyst opened with a closing date of April 13, 2022. *Id.* ¶ 39. The position was built off the work Plaintiff conducted "according to her objective and annual performance review." *Id.* The position was open to the public, with potential telework authorization and relocation incentives. *Id.* ¶ 41. Moreover, although the position was titled Supervisory Program Analyst, the position was to serve as the Deputy Chief of Staff for Mission Integration. *Id.* ¶ 42. Plaintiff had the specialized experience required for the role based on her then current role in DCSA. *Id.* ¶ 46.

Plaintiff applied for the position. *Id.* ¶ 49. The hiring panel was chaired by Ms. Brown and included Dan Finucane and Randy Staples. *Id.* ¶ 50. The resume review criteria went beyond the noticed duties of the position and qualifying specialized experience. *Id.* ¶ 52. Fifteen candidates were considered for the position. *Id.* ¶ 54. Plaintiff scored higher than the incumbent, Holly Breault, after the resume review. *Id.* ¶ 56.

When two candidates declined to participate in an interview, Ms. Brown lowered the criteria to obtain another interviewee, which allowed Ms. Breault to participate. *Id.* ¶ 57. Following the panel interview, two candidates were interviewed by Ms. Cahill. *Id.* ¶ 59. Plaintiff was not interviewed. *Id.*[2] Plaintiff asserts that Ms. Breault was hired for the Supervisory Position and that she is White. *Id.* ¶ 87.

---

[2] It is unclear from the Complaint whether Plaintiff means to suggest that she was not interviewed at all or whether Plaintiff was not interviewed in the second round with Ms. Cahill.

Plaintiff then requested a meeting with Ms. Cahill. *Id.* ¶ 60. Plaintiff viewed herself as having been passed over for two deputy chief of staff positions in three years even though she had been responsible for the duties of each position before the position was filled. *Id.* ¶ 61. Plaintiff also noted that there were no African-American women in the Chief of Staff's Office above a level GS-12. *Id.* ¶ 62. Plaintiff knew that an African-American man had been detailed to another department. *Id.* ¶ 63.

In the meeting with Ms. Cahill on July 6, 2022, Plaintiff expressed frustration that she had not been selected and that Ms. Cahill had not mentored her. *Id.* ¶¶ 65-67. Following the meeting, Ms. Cahill sent Plaintiff an email connecting Plaintiff with Employee Relations based on the concerns Plaintiff had raised. *Id.* ¶ 68.

On July 12, 2022, Ms. Brown sent an email to Deana Rasnick asking for guidance on how to complete a "closeout for [Plaintiff] in DCIPS." *Id.* ¶ 69.[3] On July 19, 2022, Plaintiff made initial contact with the Diversity and Equal Opportunity Office ("DEO") to contact a counselor regarding her complaint that she was discriminated against based on race, color, and age. *Id.* ¶ 70. That same day Ms. Cahill asked Employee Relations for guidance about reassigning Plaintiff out of the Chief of Staff's Office. *Id.* ¶ 71. Ms. Cahill then issued a "Letter of Counseling" to Plaintiff for disrespectful and unprofessional behavior towards Ms. Brown. *Id.* ¶ 72. The "Letter of Counseling" mentioned an email exchange between Plaintiff and Ms. Brown. *Id.* ¶ 73. Plaintiff asserts that Ms. Cahill mischaracterized the contents of the email. *Id.* ¶ 74.

On July 25, 2022, Ms. Cahill requested a meeting on July 26, 2022, and titled the invitation: "WAY AHEAD MEETING." *Id.* ¶ 76. Approximately four hours after the invite issued, Plaintiff

---

[3] The Complaint does not explain what this means.

requested that the meeting be postponed because she had a conflict and because she desired to have a neutral third-party in attendance. *Id.* ¶ 78. Two hours after Plaintiff's response, Ms. Cahill received an email from Booker T. Bland, Jr. requesting a detail to cover an employee shortage at Enterprise Security Operations ("ESO").[4] *Id.* ¶ 78. Ms. Cahill denied the request to reschedule the meeting, denied the request for a third-party representative, and informed Plaintiff that she would be reassigned to ESO. *Id.* ¶ 80.

On July 26, 2022, Ms. Cahill sent an email to Mr. Bland with a statement of duties for Plaintiff's detail. *Id.* ¶ 81. On July 28, 2022, Ms. Cahill sent an email to Barbara Elain Phelps asking that Ms. Phelps process the detail to ESO to begin August 1, 2022, for four months, until the reassignment action and development of a Position Description ("PD") are completed.[5] *Id.* ¶ 82. Ms. Cahill also advised that Mr. Bland concurred with the statement of duties. *Id.*

Removing Plaintiff from a 0343 series position and placing her in an 0080 series position caused Plaintiff to be noncompetitive for promotion due to series lack of knowledge. *Id.* ¶ 84.

Plaintiff submitted an agency discrimination complaint, and, on May 25, 2023, Plaintiff received the Final Agency Decision. *Id.* ¶¶ 10-24.

### B.  Procedural Background

On August 15, 2023, Plaintiff filed her Complaint. Dkt. 1. After being granted an extension of time, Defendant filed his Motion to Dismiss on October 25, 2023. Dkt. Nos. 9; 10. On November 13, 2023, Plaintiff filed her Opposition and, on November 20, 2023, Defendant filed

---

[4] Although Plaintiff does not define the term "ESO" in her Complaint, it is clear from the Motion to Dismiss briefing that the acronym stands for Enterprise Security Operations.

[5] Again, Plaintiff failed to define what is a "PD," so the Court relies on the definition provided in the Motion to Dismiss briefing.

his Reply.  Dkt. Nos. 14; 15.  On April 26, 2024, Plaintiff filed a Notice of Supplemental Authorities.  Dkt. 18.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).  "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).  Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. ANALYSIS

Plaintiff's Complaint asserts four claims against Defendant pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"): (i) discrimination on the basis of race and color; (ii) Title VII retaliation; (iii) age discrimination;

and (iv) ADEA retaliation. Dkt. 1. Defendants argue that several of Plaintiff's claims are, in part, time-barred and that Plaintiff has failed to state any claim for relief. Dkt. 10.[6] Each argument will be addressed separately.

### A.   Whether Any Claims are Time-Barred

Based on the allegations in the Complaint, Defendant construed the Complaint as relying on Plaintiff not receiving the Deputy Chief of Staff, Industrial Security Directorate, position in September 2019. Dkt. 10 at 6. As Defendant correctly notes, any federal employee who seeks to bring a Title VII claim in federal court must first exhaust her or his administrative remedies. *Stewart v. Iancu*, 912 F.3d 693, 698-99 (4th Cir. 2019). It is well established that a plaintiff must bring any allegations of Title VII or ADEA violations to the attention of an EEO counselor within 45 days of the incident(s). 29 C.F.R. § 1614.105(a)(1); *Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015). Failure to exhaust administrative remedies by not meeting the 45-day regulatory deadline is "generally fatal to bringing a discrimination suit against the federal government." *Figueroa-Ibarry v. Rennick*, 2021 WL 954843, at *4 (E.D. Va. Mar. 12, 2021). Here, Plaintiff's first contact with the DCSA DEO was July 19, 2022. Dkt. 1, ¶ 11. Plaintiff agrees that any claims based on the Industrial Security Directorate Deputy Chief of Staff position would be time-barred but denies that she is basing any of her claims on not obtaining that position. Because Defendant's argument is premised on a claim that Plaintiff is not asserting, this portion of the Motion to Dismiss will be denied as moot.

---

[6] Defendant notes that one paragraph of the Complaint makes reference to a hostile work environment claim. Dkt. 10 at 19. Plaintiff asserts that the inclusion of a reference to a hostile work environment was in error and denies that she is asserting a hostile work environment claim. Dkt. 14 at 2 n.1. Accordingly, the Court will not address any arguments with respect to a hostile work environment.

### B.  Discrimination Based on Race, Color, and Age (Counts 1 and 3)

Plaintiff's allegations of race, color, and age discrimination are largely the same. Generally, parties and courts analyzing claims of discrimination follow the familiar burden-shifting scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792, 902-05 (1973). Courts recognize that the elements of a *prima facie* case of discrimination under both Title VII and the ADEA are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment or personnel action; and (4) different treatment from similarly situated employees outside the protected class. *Robinson v. Loudoun Cnty. Pub. Schs.*, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017) (cleaned up). Although a plaintiff need not explicitly allege the elements of a *prima facie* discrimination case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), a plaintiff must still allege sufficient facts to plausibly allege discrimination and the *prima facie* case remains one of the most straightforward means to do so, *Twombly*, 550 U.S. at 570. Each of Plaintiff's claims of discrimination will be analyzed in turn.

#### i.  Claims of Adverse Employment Actions

As an initial matter, Defendant argues that three of the actions identified by Plaintiff do not qualify as "adverse personnel actions" as required under the *dicta* of *Babb v. Wilkie*, 140 S. Ct. 1168 (2020). In *Babb*, the Supreme Court observed that the ADEA uses the term "personnel action" which is "easy to understand" as referring to the actions defined in 5 U.S.C. § 2302(a)(2). 140 S.C.t. 1168, 1173. Defendant thus attempts to draw a distinction between the "adverse personnel actions" that would apply to federal sector employees as opposed to "adverse employment actions" as would apply to civilian employees. Dkt. 10 at 7-8. Although neither this District Judge nor the Fourth Circuit have addressed the impact of the *Babb dicta*, other district judges within this District have recognized that it is unclear whether the "personnel action"

definition would apply to Title VII and that, generally, the phrase "personnel action" is a broader, more inclusive term than the ordinarily used "adverse employment action." *Abdelhamid v. Sec'y of the Navy*, 525 F. Supp. 3d 671, 684 (E.D. Va. 2021) (Brinkema, J.). Plaintiff urges the Court to apply the definition of "adverse employment action." Dkt. 14 at 13.

Ultimately, the Court need not resolve this dispute with respect to the identified adverse actions here because they fail under either definition. Defendant challenges whether the following three actions constitute adverse employment actions or adverse personnel actions: (i) Ms. Cahill's July 19, 2022 Letter of Counseling; (ii) Ms. Cahill's failure to mentor Plaintiff; and (iii) the failure to issue Plaintiff an updated position description. Dkt. 10 at 8. Each of these actions fails under either standard.

To begin with, the Fourth Circuit has held that neither written nor verbal "reprimands qualify as adverse employment actions" where they do "not lead to further discipline. *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015). Here, Plaintiff has not alleged any further discipline based on the Letter of Counseling. Indeed, in the Complaint, the Letter of Counseling is not referred to with respect to any of the acts of which Plaintiff complains. Dkt. 1. In her Opposition, Plaintiff argues that the Letter of Counseling was significant because "it *can* lead to further reprimand, demotion, or termination." Dkt. 14 at 16 (emphasis added). But Plaintiff does not allege that the Letter *did* have any such consequences. Accordingly, Plaintiff cannot rely on the Letter of Counseling to support her discrimination claims.

Next, Plaintiff relies on lack of mentorship as an adverse employment action. Here, again, Plaintiff's claim fails. Plaintiff has failed to cite any authority that supports her argument. As another district judge within this District recently noted, "[n]o Fourth Circuit case affirmatively holds that the denial of mentorship constitutes an adverse employment action." *Tankesley v.*

*Hirshfeld*, No. 21-cv-1448, Order, Dkt. 34 (E.D.Va. June 17, 2022). Indeed, district courts within this Circuit have been consistent in this analytical framework. *Cohens v. Maryland Dep't of Human Res.*, No. 11–3419, 2013 WL 3944451, at *6, n. 41 (D. Md. July 30, 2013) ("Cohens's allegation that she was 'denied' statewide training opportunities, and that her training schedule was reduced—without any evidence that her salary or other elements of employment status were thereby affected—also does not [constitute an adverse employment action]"); *Maguiat v. Board of Educ. Of Prince George's Cnty.*, 2015 WL 2376008 (D. Md. May 18, 2015) ("[T]he School Board's alleged failure to provide Manguiat with a full-time mentor was not an adverse employment action."). Accordingly, Plaintiff cannot rely on the alleged failure to provide mentorship to establish an adverse employment action.

Finally, the failure of Defendant to provide an updated position description does not constitute an adverse employment action. Plaintiff points to no controlling authority supporting her position that failure to provide an updated position description constitutes an adverse employment action. Very few federal court cases address the question, but even the ones that do unanimously hold that it does not constitute an adverse employment action. *See, e.g., Bradford v. McCarthy*, 2020 WL 10232263, at *5 (W.D. Texas Mar. 18, 2020); *Poullard v. Shinseki*, 2015 WL 1428105, at *9 n.13 (N.D. Ill. Mar. 26, 2015) ("The Department's failure to update Poullard's position description does not constitute an adverse employment action."). Accordingly, Plaintiff may not rely on the failure to update her position description as an adverse employment action.

### ii. Claims of Age Discrimination

Plaintiff asserts that she withdraws her age discrimination claim (Count III). Dkt. 14 at 19. Accordingly, Count III will be dismissed without prejudice.

### iii.  Claims of Race Discrimination

Plaintiff's race discrimination claims are essentially this: Plaintiff, an Employee of the Year who had the best resume, was passed over for the Supervisory Program Analyst position (which she was already performing) in favor of a non-African-American employee who had an objectively less impressive resume by a supervisor who has placed other African-American employees on detail out of her department and who has failed to promote African-American employees beyond a GS-12 position, and then Plaintiff was subsequently detailed to ESO against her will by the same supervisor.  Dkt. 1, ¶¶ 42-46, 38, 56-57, 62, 63, 80, 85.  For purposes of surviving a motion to dismiss, this is sufficient to plausibly state a race discrimination claim based on the denial of the Supervisory Program Analyst position and the detail to ESO.

Defendant correctly notes that Plaintiff has failed to establish the existence of any similarly situated comparators for purposes of this analysis.  Dkt. 10 (citing *McCleary-Evans v. Md. Dep't of Trans.*, 780 F.3d 582, 588 (4th Cir. 2015); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010)).  But Plaintiff is not required to rely on similarly situated comparators and, although the *Twombly* standard requires plausible claims, it does not require an exhaustive level of detail.  *Swierkiewicz*, 534 U.S. at 514 (holding that allegations sufficient to survive a motion to dismiss where complaint "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination").  Although the question here is close, Plaintiff has alleged sufficient facts to nudge her race discrimination claim across the line.  *See Roughgarden v. YottaMark, Inc.*, 2011 WL 856279, at *2 (N.D. Cal. Mar. 9, 2011) (holding that allegations that company had a history of terminating older workers combined with allegations of a youth-oriented policy were sufficient to

survive a motion to dismiss).  Accordingly, the motion to dismiss is denied with respect to the race discrimination claim in Count I.

### iv.  Claims of Color Discrimination

Presumably, Plaintiff relies on the same allegations in support of her race discrimination claim to support her color discrimination claim.  This, however, is unclear as Plaintiff conflates her race and color arguments.  Although Plaintiff alleges that she is Brown and that Ms. Breault is White, Plaintiff fails to include any other factual allegations in her Complaint related to color or hue.  Courts are clear that race and color as used in Title VII are not synonymous.  *See Bryant v. Bell Atl. Md. Inc.*, 288 F.3d 124, 132 n. 5 (4th Cir. 2002) ("Color discrimination arises when the hue of the plaintiff's skin is the cause of the discrimination, such as where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.").  Because Plaintiff does not make the same allegations with respect to color that she does with respect to race, Plaintiff's color discrimination claim fails and will be dismissed without prejudice.

### C.  Retaliation (Counts 2 and 4)

With respect to Plaintiff's Retaliation Claims under Title VII and the ADEA, the parties agree that the same familiar *McDonnell-Douglas* burden shifting framework applies.  The elements of a prima facie claim of retaliation are: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and adverse action. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing to *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).

Here, there are two potential protected activities: (i) the July 6 meeting with Ms. Cahill; and (ii) the July 19 contact with the EEO.  During the July 6, 2022 meeting with Ms. Cahill, Ms.

Cahill apparently acknowledged the "concerns Ms. Fentress-Bussey had raised" and felt that they were sufficient to refer Plaintiff to Employee Relations. Dkt. 1 ¶ 66. Missing from the Complaint are allegations that Plaintiff's "concerns" included complaints of age or race discrimination. *Id.* Absent such an allegation that some approximation of age or race discrimination were discussed, Plaintiff's meeting with Ms. Cahill cannot constitute a protected activity. *See Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 153 (4th Cir. 2020) (holding that it is well established that the various anti-discrimination statutes "do not cross-pollinate" and that to state a claim of retaliation a plaintiff must allege that he or she engaged in a protected activity that falls under each particular statute); *Boyer-Liberato v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) ("Employees engage in protected . . . activity when . . . they complain to their superiors about suspected violations of Title VII."). Accordingly, at this point, Plaintiff has failed to establish that her July 6, 2022 meeting with Ms. Cahill constitutes a protected activity under either Title VII or the ADEA.

The parties agree that Plaintiff's July 19, 2022 contact with the EEO does constitute a protected activity. Plaintiff's difficulty here is that she has failed to allege that Ms. Cahill *knew* of that protected activity before she engaged in attempts to detail Plaintiff to ESO. Indeed, Plaintiff appears to concede this fact. Dkt. 14 at 22 (arguing that "it is reasonable to *infer* that Ms. Cahill was aware of Plaintiff's contact with DEO") (emphasis added). As the Fourth Circuit has recognized, "speculative theories" regarding how a decision-maker *might* have knowledge of a protected activity, as Plaintiff seeks to do here, are not sufficient to establish a causal connection. *See Roberts v. Glenn Indus. Grp. Inc.*, 998 F.3d 111, 126 (4th Cir. 2021); *see also Britt v. DeJoy*, 2022 WL 4280495, at *5 (4th Cir. Sept. 14, 2022) ("The lack of a plausible allegation of knowledge surely undermines any charge of causality between the protected activity and the

13

adverse employment action."); *Coleman v. Schneider Elec. USA*, 755 F. App'x 247, 250 (4th Cir. 2019) ("While Coleman attempts to create temporal proximity by relying . . . [on an event] that occurred closer to the events in question, the relevant date is when the decisionmakers learned of Coleman's protected activity."). Accordingly, to the extent that Plaintiff's retaliation claims are based on the July 19 DEO activity, they also fail, and the retaliation claims will be dismissed.

## IV. CONCLUSION

In sum, only Plaintiff's race discrimination claim survives the motion to dismiss. Because Plaintiff may be able to add factual allegations that plausibly state a claim of color discrimination or retaliation, Plaintiff will be permitted to amend Counts 1, 2, and 4.

Accordingly, for the foregoing reasons, it is hereby ORDERED Defendant's Motion to Dismiss (Dkt. 9) is GRANTED IN PART and DENIED IN PART. The motion is granted insofar the claims of color discrimination, Title VII retaliation, age discrimination, and ADEA retaliation will be dismissed. The motion is denied insofar as it seeks dismissal of the race discrimination claim; and it is

FURTHER ORDERED that Count 1, to the extent that it asserts a color discrimination claim, and Counts 2, 3, and 4 are DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff may file any amended complaint amending Counts 1 (color discrimination), 2 (Title VII retaliation), and 4 (ADEA retaliation) within FOURTEEN (14) DAYS of the issuance of this Memorandum Opinion and Order.[7]

It is SO ORDERED.

Alexandria, Virginia
August/4, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[7] Because Plaintiff has withdrawn her claim of age discrimination (Count 3), the Court has not provided leave to amend. If Plaintiff desires to amend her claim of age discrimination, Plaintiff must specifically seek leave to amend and establish that such amendment would not be futile.